Filed 9/12/23  Riley v. County of Los Angeles CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| NATHANIEL VAUGHN RILEY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF LOS ANGELES, <br><br> Defendant and Respondent. | B317901 <br><br> (Los Angeles County Super. Ct. No. 18STCV06789) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Olivia Rosales, Judge.  Reversed.

Alon, Edward E. Alon and Jonathan A. Alon, for Plaintiff and Appellant.

Collins + Collins, Tomas A. Guterres, David C. Moore, and Christian M. Chung, for Defendant and Respondent.

## I. INTRODUCTION

Angela Connor went into cardiac arrest while in the custody of the Los Angeles County Sheriff's Department (LASD). She was transported to the hospital where she was pronounced dead. Connor's son, plaintiff Nathaniel Vaughn Riley (plaintiff), brought a wrongful death and survivor action[1] against defendant County of Los Angeles (defendant) and others.[2] The trial court granted defendant's summary judgment motion, ruling that defendant was immune from liability under the public entity immunities for injuries to prisoners in Government Code sections 844.6, subdivision (a)(2) and 845.6.[3] Plaintiff appeals and we reverse.

## II. FACTUAL BACKGROUND

In his complaint, plaintiff alleged that on June 28, 2016, Connor pleaded no contest to petty theft and was placed on deferred entry of judgment for 12 months, subject to certain

---

[1] Plaintiff later dismissed his survivor action without prejudice.

[2] The other named defendants were LASD, LASD Sheriff Jim McDonnell, the City of Long Beach, the Long Beach Police Department, and Long Beach Police Department Chief Robert Luna. At some point, these defendants were dismissed from plaintiff's action. Only plaintiff and defendant are parties to this appeal.

[3] All further statutory references are to the Government Code unless otherwise stated.

terms and conditions.  On October 28, 2017, Long Beach Police Department officers arrested Connor for a diversion violation in her petty theft case.  When arrested, Connor possessed a hypodermic needle with heroin.

After her arrest, Connor complained that she felt "ill, cold, and discomfort."  Despite knowing or having reason to know that Connor needed immediate medical care, defendant failed to take reasonable action and summon medical care.

On November 2, 2017, Connor appeared in the trial court at the Bellflower Courthouse for sentencing on her diversion violation (the sentencing court).  Connor had been in custody from her October 28 arrest until her November 2 sentencing hearing.

At the November 2 hearing, the sentencing court "proposed to place [Connor] on probation for 24 months with time served . . . ."  The court stated that it was sentencing Connor to 12 days in county jail and giving her credit for 12 days served.  Connor asked the court, "I have credit for 12?"  The court responded, "Yes.  Six, plus six, so that's why I said twelve."  Connor asked the court, "What does that mean?"  The court responded, "That means you're done with the jail time."  The court then suspended imposition of Connor's sentence and placed her on 24 months of summary probation on various terms and conditions including that she serve 12 days in Los Angeles County Jail with 12 days of credit.

Following her court appearance, Connor was taken to a holding cell at the courthouse.  Two other women were in the cell.  Connor "complained of feeling cold and vomiting."  Thereafter, Connor became unresponsive, went into cardiac arrest, and was later pronounced dead.  The "County of Los Angeles Department

of Medical Examiner—Coroner" identified Connor's death as an accident and "listed 'heroin addiction,' 'methamphetamine,' and 'possible heroin withdrawal syndrome' as 'conditions contributing' to her cause of death."

Connor was in defendant's exclusive custody from her arrest on October 28, 2017, until her death on November 2, 2017. Defendant knew of Connor's serious medical condition that required immediate medical care, but failed to take reasonable action to summon medical care. Connor died as a result.

## III.   PROCEDURAL BACKGROUND

Defendant moved for summary judgment, or alternatively summary adjudication.[4] It argued it was entitled to summary judgment on plaintiff's wrongful death action because it was a public entity immune from liability under sections 844.6 and 845.6 because, respectively, Connor was in LASD custody and a "prisoner" "at the time of the alleged incident," and defendant's employees took reasonable actions to summon medical care for Connor, a prisoner, after they knew or had reason to know she was suffering a potentially "'serious and obvious medical conditions requiring immediate medical care' with the 'man down' notification on November 2, 2017 at the Bellflower Courthouse."

Plaintiff opposed defendant's summary judgment motion in part on the ground that there was a triable issue of fact about whether defendant's employee knew or had reason to know that

---

[4]     Because plaintiff dismissed his second cause of action for survival action prior to defendant's motion, the trial court treated the motion as a summary judgment motion only.

4

Connor was in need of immediate medical care and failed to take reasonable action to summon such medical care.  For this asserted triable fact, plaintiff relied on video footage of the area around the holding cell in which Connor was held that purported to show that Los Angeles Sheriff's Department Custody Assistant Maria Rivera, who was working outside of the cell, delayed over three minutes in responding to knocks on the holding cell door indicating a need for assistance.

In granting defendant's summary judgment motion, the trial court ruled that defendant "proffered sufficient evidence to show that the custody personnel took reasonable actions to summon medical care after the 'man down' notification was received."  "No evidence has been proffered to show that [defendant] had knowledge that [Connor] was suffering from a serious and obvious medical condition requiring immediate medical care prior to receipt of the 'man down' notification.  Plaintiff's arguments with respect to the timeliness of the custody personnel's response are based on speculation and conjecture, not controverting facts.  Evidence that gives rise to no more than speculation, conjecture, or guesswork is insufficient to establish a triable issue of material fact."

## IV.   DISCUSSION

Plaintiff contends the trial court erred in granting summary judgment based on the public entity immunities for injuries to prisoners in sections 844.6 and 845.6.  He asserts, in part, there is a triable issue of fact about whether an employee of defendant knew or had reason to know that Connor was in need

5

of immediate medical care and failed to take reasonable action to summon such medical care.  We agree.

A.    *Standard of Review*

"""A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); see also id., § 437c, subd. (f) [summary adjudication of issues].)""" (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017.)  "We review the trial court's decision [on a summary judgment motion] de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) "[I]n moving for summary judgment, a 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action.  Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.  The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' (Code Civ. Proc., § 437c, subd. (o)(2).)" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

B.    *Background*

On October 29, 2017, while in custody, Connor informed a nurse that she was "'kicking heroin'" and had high blood pressure.  Defendant knew that Connor was on medication for methamphetamine and heroin withdrawal and high blood pressure.  On October 30, 2017, Connor complained that she felt cold, weak, and nauseous and that she had thrown up her food and medications.  On October 31, 2017, Connor signed a form declining medication or treatment because she was "[n]ot kicking anymore."  On November 1, 2017, Connor complained of headaches and insomnia and was treated by a doctor who cleared her to attend a court hearing.

In a declaration in support of defendant's summary judgment motion, Custody Assistant Rivera stated she was working at the Bellflower Courthouse on November 2, 2017.  Connor was being held in Cell D.  Danielle Silva was the only inmate in Cell D with Connor.

At about 12:18 p.m. that day, Rivera assisted in giving lunch to the inmates in Cell D.  Connor did not then appear to be in distress and did not complain that she was in distress.

At about 12:38 p.m., Rivera heard a knocking coming from Cell D.  She asked, "[W]hat do you need[?]"  "[T]here was no response after the initial knock."  (In her deposition testimony, Rivera testified she heard multiple sequences of multiple knocks.)  She again asked, "[W]hat do you need[?]"  Rivera heard a voice inside Cell D respond, "[H]elp."  Rivera characterized that response as a ""'man down" notification.'"

Rivera went to Cell D and opened the window flap.  She saw Silva and asked her what was wrong.  Silva responded that

7

Connor had been lying on the bench and had rolled over and fallen to the floor.

Rivera opened the door to Cell D and stepped into the cell's sally port.[5]  She again asked Silva what had happened and Silva responded that Connor had fallen off the bench and onto the floor.  Rivera called out to Connor who did not respond.  Rivera stepped out of the sally port and into the main lockup area and informed a Deputy Sheriff that there was a "'man down'" in Cell D and they needed "'rescue'" to respond to their location.

In an interview with homicide detectives, Silva said that after Connor fell to the floor she (Silva) first attended to Connor and then "knocked on the door and . . . asked for help, but it took them a minute to come."  When no help was forthcoming, Silva returned to check on Connor.  Silva could not find Connor's pulse and determined Connor was not breathing, so Silva "knocked again," "asked for help," and said "medic."  Silva did not "know why they [took] so long to come and check . . . ."

Video footage of the lockup area outside Cell D depicts what a factfinder can readily conclude was Rivera turning her head and attention toward Cell D at least two times in the three and a half minutes before she walked over to that cell.

C.    *Analysis*

Section 844.6, subdivision (a)(2) provides immunity from liability to the State for injuries to prisoners.  (*Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1070 (*Castaneda*).)  Section 844.6, subdivision

_____

[5]    A "sally port" is a caged area outside a cell that allows Sheriff's Department personnel to see inside the cell.

(a)(2) provides, "(a) . . . except as provided in this section and in Section[] . . . 845.6, . . . a public entity is not liable for:  [¶]  . . . [¶]  (2) An injury to any prisoner."[6]

Section 845.6 creates an exception to the State's immunity under section 844.6, subdivision (a)(2).  (*Castaneda, supra*, 212 Cal.App.4th at p. 1070.)  Section 845.6 provides in relevant part, "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."

Section 845.6 imposes a duty on public employees to summon medical care when "there is actual or constructive knowledge that the prisoner is in need of immediate medical care."  (*Castaneda, supra*, 212 Cal.App.4th at p. 1070.)  Whether a public employee has "reason to know" a prisoner is in need of immediate medical care is judged by the objective standard.[7] (*Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 288.)

---

[6]     For purposes of our analysis, we assume without deciding that Connor was a "prisoner" within the meaning of sections 844.6 and 845.6 while held in Cell D.

[7]     The objective standard looks at an issue from a reasonable person's perspective.  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649.)

9

Rivera's declaration suggests she heard knocking from Cell D at 12:38 p.m. After she inquired about the knocks to the cell's inmates and received a call for help, she responded. Silva's statement to the homicide detectives is inconsistent with Rivera's declaration. Silva stated that she knocked on the door and asked for help. When she did not receive help, she returned to check on Connor. After determining that Connor was not breathing, she again knocked and asked for help and said "medic." Silva believed that it took a long time for someone to "come and check." The video footage outside Cell D permits a factfinder to conclude Rivera turned her head and attention toward Cell D more than once beginning at least three and a half minutes before she walked over to Cell D. Defendant and the trial court characterize plaintiff's reliance on the videotape evidence as speculative and conjectural. Instead, it is concrete, time-specific evidence upon which a factfinder could conclude that defendant delayed in responding when Silva attempted to summon aid for Connor. Accordingly, there is a triable issue of fact about whether an employee of defendant knew or had reason to know that Connor was in need of immediate medical care and failed to take reasonable action to summon such medical care and the trial court erred in granting defendant's summary judgment motion.

## V.    DISPOSITION

The judgment is reversed.  Plaintiff is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, J.


We concur:


BAKER, Acting P. J.


MOOR, J.

11