Filed 11/12/13  Huffman v. California CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DANIEL G. HUFFMAN, | D063025 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00091220-CU-CR-CTL) |
| STATE OF CALIFORNIA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Reversed and remanded with directions.

Okorie Okorocha for the Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Jonathan L. Wolff and Michelle Des Jardins, Assistant Attorneys General, Vickie P. Whitney and John Paul Walters, Deputy Attorneys General, for the Defendant and Respondent.

Plaintiff and appellant Daniel G. Huffman, a former inmate at R.J. Donovan Correctional Facility (Facility), appeals from a judgment entered after the trial court sustained without leave to amend the demurrer of the State of California (the State) to Huffman's first amended complaint. Huffman had sued the State and several "John Doe" correctional officers, alleging in part that he was beaten by the officers and other inmates while housed at Facility, and that the State was vicariously liable for the acts of the individual defendants. In part, the trial court ruled the State was immune from liability under Government Code[1] sections 844.6 and 845.6. On appeal, Huffman contends he could have stated facts sufficient to establish vicarious liability against the State and thus the trial court abused its discretion by sustaining the State's demurrer without leave to amend. He further contends the trial court erred by dismissing sua sponte his "Doe" defendants.

We conclude the trial court correctly sustained without leave to amend the State's demurrer to the causes of action alleged in Huffman's first amended complaint because his allegations place his case within the immunity from liability afforded the State under section 844.6, subdivision (a)(2). However, we hold Huffman has shown he should have been granted leave to amend to allege a violation of section 845.6. We further conclude the court erred by dismissing the action as to the Doe defendants. Accordingly, we reverse the judgment and remand with directions set forth below.

---

1    Statutory references are to the Government Code unless otherwise specified.

2

FACTUAL AND PROCEDURAL BACKGROUND

In setting out the background facts, we accept as true the properly pleaded and material allegations of Huffman's first amended complaint. (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 866; *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 401.)

From March 2008 to November 2011, Huffman was incarcerated at Facility and housed in a gymnasium within the general population main line. While there, it was known he suffered from anxiety disorder and bipolar disease, and was severely depressed and sick. Despite these conditions, he was placed on the top bunk of a three-tiered bunk. Huffman was supposed to be under protective custody and constantly checked.

On April 15, 2010, a decision was made to take Huffman off his medications. He was told he would have to wait to see a doctor. On May 1, 2010, at approximately 2:00 a.m., Huffman was beaten by correctional officers and other inmates and suffered massive brain trauma and other neck injuries. That day, Huffman's mother received a call stating that her son had been hurt and was on his way to the hospital, and that she should get there immediately. When she arrived, the hospital ombudsman told her the incident had occurred at 2:00 a.m. and that Huffman had initially been taken to a hospital that could not treat him due to the extent of his injuries. He also told her Huffman had been in surgery since 4:00 a.m., and that he had severe brain injuries. Huffman was stabilized and transferred to Scripps Mercy Hospital Trauma Center in San Diego. He underwent

3

surgery for over nine hours and was on complete life support for over five weeks, and on partial life support from mid-June 2010 to approximately September 2010.

Huffman had a very large right temporal hematoma, several areas in his brain were bleeding, and his neck was fractured in several places. He came to the hospital emaciated and with pneumonia complicated by methicillin-resistant staphylococcus aureus 10. As a result of his injuries, Huffman has been incapacitated. Huffman obtained relief from his late filing of a state tort claim, and also filed an application for his mother to be guardian ad litem on his behalf.

Huffman eventually filed suit in superior court, and in July 2012 filed a first amended complaint against the State and "John Doe" correctional officer Nos. 1 through 7, asserting causes of action for negligence, assault, battery by a peace officer, intentional infliction of emotional distress, and disability discrimination in violation of Civil Code section 52, subdivision (a) (the Unruh Civil Rights Act; see Civ. Code, § 51, subd. (a)). As for his claim of negligence, Huffman alleges the individual defendants owed him a duty to take reasonable measures to ensure his safety and security while in their custody, including properly classifying him so that he was in protective custody, and also breached a duty to him by "allowing [him] to be severely injured from an alleged fall from a gymnasium bunk bed . . . ." In his cause of action for assault, Huffman alleges the individual defendants acted with intent to cause "harmful contact" and "touched . . . [him] in an harmful manner" without his consent. In his claim of battery by a peace officer, Huffman alleges the individual defendants intentionally touched him and "used

4

unreasonable force . . . for no legitimate law enforcement purpose" without his consent. Huffman alleges that the individual defendants' assault and battery was outrageous and an "abuse of a position of authority" and that they knew he was vulnerable to emotional distress and that their conduct would likely result in such distress. Finally, in his cause of action for violation of the Unruh Civil Rights Act, Huffman alleges the individual defendants "discriminated against [him] by refusing to accommodate his injuries and resulting disability that was either the result of their negligence in allowing [him] to fall from a higher bunk when he was supposed to be in protective custody, or as a result of a violent assault upon him resulting in massive head and neck injuries." As to each cause of action, he alleges the individual defendants were all acting within the course and scope of their employment with the State and that the State was vicariously liable for their tortious acts.

The State demurred to Huffman's first amended complaint on grounds it failed to state facts sufficient to constitute a cause of action. It argued it was statutorily immune from liability under sections 844.6, subdivision (a)(2) and 845.6 for all of Huffman's causes of action, including those alleging injury to him as a prison inmate or failure to furnish medical care, and Huffman had not alleged any facts showing those statutory immunities did not apply. The State asked the court to disregard Huffman's contention in his first amended complaint that the State was "vicariously liable" for the acts of the individual Doe defendants. As for Huffman's disability discrimination cause of action, the State argued the claim was brought under the Unruh Civil Rights Act to which the

5

broad statutory immunities likewise applied. It argued the section 845.6 exception, which imposes liability on a public entity if the employee "knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon" it, did not apply to Huffman's claims because he did not allege facts establishing he had a serious and obvious medical condition requiring immediate care.

The trial court sustained the State's demurrer without leave to amend. Citing Government Code sections 844.6 and 845.6, as well as Civil Code section 52 and *Wright v. State* (2004) 122 Cal.App.4th 659, it ruled Huffman did not cure the defects in his original complaint, and that the State was immune from liability. The court's September 28, 2012 minute order, which the court signed, states, "The Court orders the entire action dismissed without prejudice."

On October 3, 2012, Huffman and his guardian ad litem moved to clarify the court's order.[2] Arguing the State could be vicariously liable for the acts of its employees if the employees were not themselves immune, he asserted the court's order was vague in that it did not provide an explanation as to (a) why the complaint did not properly state

[2]    After completion of briefing in this matter, the State moved to augment the record on appeal to include Huffman's clarification motion and reply, as well as his motion for reconsideration filed on November 1, 2012, the trial court's November 13, 2012 minute order, and the trial court's December 5, 2012 judgment of dismissal. The first two documents are already within the augmented clerk's transcript filed in March 2013 after this court granted Huffman's unopposed motion to augment the record. We grant the State's unopposed request as to the remaining documents, which are part of the superior court file in this case. (Cal. Rules of Court, rule 8.155(a)(1)(A) [on the motion of any party, the reviewing court may augment the record to include any document filed or lodged in the case in superior court].)

liability against the State and (b) why the defect could not be corrected with leave to amend. The State opposed the motion in part stating it was premature: that the State had not yet filed a proposed order and the final order had not been filed or issued. It also argued plaintiffs had waived their challenge to the order by submitting to the tentative ruling, thus acquiescing to or contributing to any error, and that the court's order was nevertheless clear and complete.

On October 31, 2012, Huffman filed his notice of appeal.[3] The next day, Huffman moved for reconsideration and asked to vacate the court's September 2012 order to the extent it had dismissed the Doe defendants.

On November 13, 2012, the trial court denied Huffman's motion for clarification. As for Huffman's reconsideration motion, the court disregarded the motion on grounds it was not calendared and was untimely filed and served.

On December 5, 2012, the court entered a judgment of dismissal of the action against the State. The judgment states: "The demurrer of defendant State of California was fully briefed, and presented for oral argument on September 28, 2012, at which time the court adopted the tentative ruling and sustained the demurrer without leave to amend.

---

[3] Huffman's notice of appeal was not premature even though it was filed before the court entered its judgment of dismissal of the action against the State. Though an order sustaining a demurrer without leave to amend is not appealable, an appeal is proper after entry of a dismissal on such an order. (See *Berri v. Superior Court* (1955) 43 Cal.2d 856, 860; *Los Altos Golf and Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 202.) As we point out below, the trial court's September 28, 2012 minute order, because it was signed, was an effective judgment of dismissal of the entire action from which an appeal could properly be taken. (Code Civ. Proc., § 581d.)

Plaintiff was served with notice of the ruling on the demurrer on October 2, 2012. The court issued an order sustaining the demurrer without leave to amend as to defendant State of California on October 30, 2012. Defendant State of California is entitled to dismissal of the first amended complaint with prejudice. [¶] IT IS ORDERED that plaintiff's first amended complaint against defendant State of California is dismissed with prejudice, and that plaintiff take nothing from this defendant."

## DISCUSSION

### I. *The State's Demurrer*

A. *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, . . . [w]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) We review the complaint de novo and determine whether the pleading alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba*, at p. 865.) A plaintiff may seek leave to amend for the first time on appeal. (Code Civ. Proc., § 472c, subd. (a); *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746; *San*

8

*Diego City Firefighters, Local 145, v. Board of Administration etc.* (2012) 206 Cal.App.4th 594, 606.) If the judgment is correct on any ground stated in the demurrer, we will affirm it regardless of the trial court's stated reasons. (*San Diego City Firefighters*, at p. 605; *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312.)

B. *The State is Entitled to Section 844.6 Immunity With Respect to Injuries Incurred by Huffman*

We need not determine whether Huffman's allegations of negligence, assault and battery, intentional infliction of emotional distress, or violation of the Unruh Civil Rights Act state a cause of action. Where the issue of governmental immunity is dispositive as to those causes of action, as is the case here, we may for expediency resolve that question first and assume that the first amended complaint adequately states those causes of action. (See *Kisbey v. State of California* (1984) 36 Cal.3d 415, 418, fn. 3; *Lanier Investments v. Department of Water & Power* (1985) 170 Cal.App.3d 1, 7.)

Section 815 provides that "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person," "[e]xcept as otherwise provided by statute." (§ 815, subd. (a).) Subdivision (b) of section 815 states "[t]he liability of a public entity established by this part . . . is subject to any immunity of the public entity provided by statute . . . ." Public entity tort liability is "exclusively statutory" under section 815. (*C.A. v. William S. Hart Union High School Dist.*, *supra*, 53 Cal.4th at p. 868; see *San Mateo Union High School District v. County of San Mateo* (2013) 213 Cal.App.4th 418, 427.) Under these laws,

9

"direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714." (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183; see also *Miklosy v. Regents of Univ. of Cal.* (2008) 44 Cal.4th 876, 899 ["section 815 abolishes common law tort liability for public entities"].) Thus, " '[s]overeign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute.' " (*Castaneda v. Department of Corrections and Rehabilitation* (2013) 212 Cal.App.4th 1051, 1069-1070 (*Castaneda*), quoting *Cochran v. Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 409.)

Section 815.2 subjects public entities to "liability, based on respondeat superior principles, for the misconduct of their employees that occurred in the scope of their employment." (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127; *Lawson v. Superior Court* (2010) 180 Cal.App.4th 1372, 1388.)[4] But "that rule does *not* apply in the case of injuries to prisoners." (*Lawson*, at p. 1383.)

Sections 844 through 846 contain provisions applicable to correctional facilities. As pertinent here, section 844.6, subdivision (a)(2) provides that, with specified

---

4       Section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

exceptions, public entities are not liable for "an injury to any prisoner" unless liability is imposed by statute.[5] The statute, however, does not immunize a public *employee* from liability for injury proximately caused by the employee's negligent or wrongful act or omission. (§ 844.6, subd. (d).) Under it, a public entity may, but is not required, to pay any judgment or settlement against a public employee; however, it "shall pay" a judgment or settlement based on a medical malpractice claim against specified public employees.[6]

Section 845.6 grants public entities and public employees immunity from liability for "injury proximately caused by the failure of the employee to furnish or obtain medical

---

[5]    More fully, section 844.6 states: "(a) Notwithstanding any other provision of this part, except as provided in this section and in Sections 814 [liability based on contract], 814.2 [workers compensation], 845.4 [interference with right of prisoner to judicial determination or review of legality of confinement] and 845.6 [failing to obtain medical care for prisoners who are in need of medical care], or in Title 2.1 (commencing with Section 3500) of Part 3 of the Penal Code [relating to biomedical research on prisoners], a public entity is not liable for: [¶] . . . [¶] (2) An injury to any prisoner. [¶] (b) Nothing in this section affects the liability of a public entity under Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code. [¶] (c) Except for an injury to a prisoner, nothing in this section prevents recovery from the public entity for an injury resulting from the dangerous condition of public property under Chapter 2 (commencing with Section 830) of this part."

[6]    In full, section 844.6, subdivision (d) provides: "Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission. The public entity may but is not required to pay any judgment, compromise or settlement, or may but is not required to indemnify any public employee, in any case where the public entity is immune from liability under this section; except that the public entity shall pay, as provided in Article 4 (commencing with Section 825) of Chapter 1 of this part, any judgment based on a claim against a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state for malpractice arising from an act or omission in the scope of his employment, and shall pay any compromise or settlement of a claim or action, based on such malpractice, to which the public entity has agreed."

11

care for a prisoner in his custody . . . ." (§ 845.6.[7]) But, with exceptions not applicable here, that statute imposes liability on a public employee, and also the public entity where the employee is acting in the scope of employment, "if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." (*Ibid.*) "The first clause of section 845.6 establishes the immunity generally of both the public entity and its employees from liability 'for injury proximately caused by the failure of the employee to *furnish or obtain medical care* for a prisoner in his custody.' . . . The second phrase creates a limited public-entity liability when: (1) the public employee 'knows or has reason to know [of the] need,' (2) of '*immediate* medical care,' and (3) 'fails to take reasonable action to *summon* such medical care.' " (*Castaneda*, *supra*, 212 Cal.App.4th at p. 1070.)

By his arguments, Huffman concedes section 844.6 immunity applies to the State. His sole contention is that he can state facts demonstrating he falls within the *exceptions*

---

[7]     Section 845.6 provides: "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the public entity from its obligation to pay any judgment, compromise, or settlement that it is required to pay under subdivision (d) of Section 844.6."

12

to the rule, including the section 845.6 exception for failure to summon medical care.[8] He argues: "Appellant believes that the severity of his injuries were due to a deliberate indifference to his medical needs by Respondent correctional officers, allowing him to 'bleed out[,'] and only when he was close to death did medical care arrive. Because of this failure to immediately summon the prison medical facilities, Appellant's injuries were more severe. These facts, while not adequately stated in the amended complaint, absolutely could have been stated, and Respondent would then be subject to vicarious liability for the wrongful action of the now Doe Defendants. As such, the trial court abused its' [*sic*] discretion in sustaining the Respondent's demurrer without leave to amend and then dismissing the case."

The factual allegations of Huffman's first amended complaint demonstrate, and neither party disputes, that during the events described in the complaint, Huffman was a "prisoner" as that term is defined under the Tort Claims Act. (§ 844; *Lawson v. Superior Court*, *supra*, 180 Cal.App.4th at p. 1384 [" ' "prisoner" includes an inmate of a prison, jail, or penal or correctional facility' "].) And, each of Huffman's causes of action for negligence, assault, battery, intentional infliction of emotional distress, and violation of Civil Code section 52, seeks damages for Huffman's personal injuries. As we have explained, Government Code section 844.6 confers immunity on the State from liability

---

8       Huffman seems to suggest that he may state facts showing the section 844.6, subdivisions (b) and (c) exceptions for injuries caused by negligent operation of a vehicle or dangerous condition of public property apply here. But Huffman does not meaningfully explain how he could amend his complaint to state facts invoking those exceptions.

for such injuries.  Based on Government Code section 844.6 immunity, the trial court properly sustained the State's demurrer to the above-referenced causes of action without leave to amend.

C. *Huffman Has Shown a Reasonable Possibility He Can State a Cause of Action Under Section 845.6 for Failure to Take Reasonable Action to Summon Medical Care*

" 'In view of the fact that tort causes of action against public entities are now based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable.  Every fact essential to the existence of statutory liability must be pleaded.' " (*Richardson-Tunnell v. School Ins. Program for Employees (SIPE)* (2007) 157 Cal.App.4th 1056, 1061, quoting *Susman v. City of Los Angeles* (1969) 269 Cal.App.2d 803, 809.)  We assess whether Huffman has pleaded, or if there is a reasonable possibility he can plead, specific and essential facts sufficient to support a statutory cause of action under section 845.6.

In *Castaneda*, the Court of Appeal explained:  "Section 845.6 is very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, not for certain employee's malpractice in providing that care.  The 1963 Law Revision Commission comments to section 845.6 clarify, 'This section limits the duty to provide medical care for prisoners to cases where there is actual or constructive knowledge that the prisoner is in need of immediate medical care.  *The standards of medical care to be provided* to prisoners involve *basic governmental policy* that *should not be subject to review in tort suits for damages*.'

14

[Citation.] Thus, section 845.6 creates out of the general immunity a limited cause of action against a public entity for its employees' failure to *summon* immediate medical care only. [Citation.] The statute does not create liability of the public entity for malpractice in furnishing or obtaining that medical care. [Citations.] Nor does the statute make the State ' "vicariously liable for the medical malpractice of its employees. [Citation.] Although the State is required to pay the judgment assessed against its employees for medical malpractice committed against a prisoner, the State is immune from suit directly." ' " (*Castaneda*, *supra*, 212 Cal.App.4th at pp. 1070-1071.)

We conclude there is a reasonable possibility Huffman can plead specific facts sufficient to impose liability against the State under this statute. As we have explained above, to state a cause of action against the State under section 845.6, Huffman must allege a public employee, acting within the scope of employment, knew or had reason to know the need for *immediate* medical care, but failed to *take reasonable action* to summon it. Huffman alleged he was beaten by correctional officers and other inmates, and his allegations about his ensuing injuries and hospitalization suggest he suffered a serious and obvious trauma requiring immediate medical care. On appeal, Huffman explains he can plead that the time frame within which the officers summoned medical care for him was not reasonable; that after his beating they let him "bleed out" and did not take reasonable steps to summon medical care quickly enough given the severe nature of his injuries. These facts and arguments suggest a reasonable possibility that Huffman can state a cause of action against the State under section 845.6.

15

We are not persuaded by the State's arguments to the contrary. It argues Huffman never attempted to state such a cause of action in his first amended complaint, which does not contain any allegations regarding the failure to summon medical care. It points out Huffman alleges that the correctional officers did in fact summon medical care, which resulted in him being, in the State's words, "quickly transported from the prison to an outside hospital." It essentially argues that there can be no liability under section 845.6—that the officers' actions were reasonable as a matter of law—based on Huffman's allegations that he was transported, treated, stabilized and placed in surgery within two hours of the beating. Citing *Watson v. State of California* (1993) 21 Cal.App.4th 836, the State characterizes Huffman's burden as having to plead the prison guard knows or has reason to know of the need "of *immediate* medical care and . . . fails to *summon* such care."

It is irrelevant that Huffman did not attempt to plead a statutory cause of action under section 845.6, as our task on review of the sustaining of a demurrer is to decide whether he can state *any* cause of action. "On demurrer . . . , the question is whether the facts alleged in the complaint might support any cause of action, even one not explicitly articulated in the document." (*Lee v. Bank of America* (1994) 27 Cal.App.4th 197, 216.) Having assessed that question, we are not prepared to say that allegations that Huffman was in surgery within two hours after his beating show that the correctional officers took reasonable action to summon medical care, obviating liability under section 845.6 as a matter of law. Further, the State's characterization of section 845.6 liability reads the

16

reasonableness element out of the statute; it ignores the statutory language stating that the employee must fail to *take reasonable action* to summon medical care, a question that *Castaneda* recognizes is one of fact for the jury. (*Castaneda*, *supra*, 212 Cal.App.4th at p. 1073 [the public employee's knowledge of the need for immediate health care and the reasonableness of his or her actions in summoning care are factual questions for the jury], citing *Hart v. County of Orange* (1967) 254 Cal.App.2d 302, 307.) Here, Huffman has shown he can allege correctional officers waited to summon medical care while they watched him "bleed out" and he suffered "massive brain trauma" as a result.

We also reject the State's argument that under *Castaneda*, claims regarding delays in medical care are in the purview of negligence and malpractice, which fall outside the immunity exception conferred by section 845.6. *Castaneda* does not stand for that proposition. *Castaneda* involved a judgment following a jury trial, in which the jury found the State had violated section 845.6 by failing to take reasonable action to summon medical care for a prisoner. (*Castaneda*, *supra*, 212 Cal.App.4th at p. 1057.) The Court of Appeal reversed that judgment, holding that the facts viewed in the light most favorable to the verdict did not amount to a failure to summon medical care. (*Id*. at p. 1074.) It was undisputed that the prisoner, who was in pain and had a lesion, was examined by a doctor on intake and referred to a urologist, and then three weeks later for a biopsy. (*Id*. at p. 1058.) The biopsy referral was denied because the prisoner was being transferred to his permanent placement the next day where he would be screened and his referral would be handled. (*Ibid*.) The prisoner was then examined by a nurse

17

practitioner and scheduled to go to a urology clinic but he was released to federal authorities in March 2006, days before his appointment. (*Id*. at p. 1059.) After his release from federal custody in February 2007, the prisoner was diagnosed with cancer. (*Ibid*.)

On appeal, the Court of Appeal agreed the evidence established the State's immunity by virtue of the prisoner's examination on intake by the physician and also by the nurse practitioner who both assessed him, included cancer as part of a differential diagnosis, and referred him for further treatment. (*Castaneda*, *supra*, 212 Cal.App.4th at p. 1072.) According to the court, the failure of the employees to provide further treatment, ensure further diagnosis, or monitor him for follow up went to the reasonableness of the medical care, it was not a failure to summon medical care. (*Id*. at p. 1072.) Further, the denial of the prisoner's biopsy involved the exercise of medical judgment, and was not subject to a tort suit for damages. (*Id*. at pp. 1072-1073.) All of the omissions fell under the rubric of obtaining or providing medical care, for which actions the State was immune. (*Id*. at p. 1073.) The Court of Appeal held that, "[o]nce summoned, the quality of medical care is a matter of medical policy and practice, imposing on medical practitioners a duty to exercise that degree of diligence, care, and skill possessed by other members of the profession, but it is not a violation of the employee's obligation to summon medical care under section 845.6." (*Id*. at p. 1074.)

In sum, we conclude Huffman has shown he should be granted leave to amend a statutory cause of action against the State for violation of section 845.6.

18

## II. *The Trial Court Erred by Dismissing the Doe Defendants*

The trial court's September 28, 2012 minute order, because it was signed, was an effective judgment of dismissal of the entire action.  (See Code Civ. Proc., § 581d ["All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes, and the clerk shall note those judgments in the register of actions in the case"]; *Brehm v. 21st Century Ins. County.* (2008) 166 Cal.App.4th 1225, 1233-1234 & fn. 5; cf. *Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577-1579 [unsigned minute order dismissing complaint was not effective as a judgment].)  Huffman contends the trial court abused its discretion by sua sponte dismissing his action against the Doe defendants, which denied him an adjudication on the merits.  He points out the individual defendants were not subject to the State's demurrer and could be identified with discovery, permitting amendment of the first amended complaint.

The State concedes the trial court might have erred by dismissing the Doe defendants.  It argues, however, that Huffman waived the right to challenge the court's dismissal by submitting to the court's tentative ruling sustaining the demurrer without leave to amend, failing to raise the status of the Doe defendants in his clarification motion, and failing to otherwise challenge the dismissal order before filing his notice of appeal.

The State's waiver arguments are unavailing.  It fails to recognize that after Huffman filed his notice of appeal, which was properly taken from the appealable

19

September 28, 2012 judgment, all proceedings were stayed and the trial court was divested of subject matter jurisdiction to take any further action in the case. (See *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189, 196-197; *Macaluso v. Superior Court* (2013) 219 Cal.App.4th 1042, 1047; *Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 41.) Thus, the trial court could not have given Huffman relief even had he properly and timely moved for it.

It is of no moment that the parties did not raise the subject matter jurisdiction issue either below or in their briefs on appeal. Subject matter jurisdiction " 'either exists or does not exist' "; it "cannot be conferred by stipulation, consent, waiver or estoppel." (*In re A.C.* (2005) 130 Cal.App.4th 854, 860.) The trial court erred by dismissing Huffman's complaint against the individual defendants, as the State's demurrer did not address the causes of action against them.

20

DISPOSITION

We reverse the judgment of dismissal as to the State of California and the Doe defendants and remand the matter to the superior court with directions to enter an order sustaining without leave to amend the State of California's demurrer as to Daniel G. Huffman's causes of action against the State only for negligence, assault, battery by a peace officer, intentional infliction of emotional distress, and violation of the Unruh Civil Rights Act, and granting Huffman leave to amend to allege a cause of action under Government Code section 845.6. The action shall proceed as against the Doe defendants. The parties shall bear their own costs on appeal.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

NARES, J.

21