Filed 2/26/16  Cox v. County of Nevada CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| NOAH COX, a Minor, etc., et al., | C077508 |
| Plaintiffs and Appellants, | (Super. Ct. No. TCU125115) |
| v. | |
| COUNTY OF NEVADA, | |
| Defendant and Respondent. | |

Officers detained Clara Soto following an automobile accident that also involved her two children, Noah and Kiera Cox (plaintiffs).  The officers arrested Soto for driving under the influence and child endangerment.  After she was examined at a local hospital, Soto was incarcerated for three hours.  Two days later Soto died.  Plaintiffs brought suit against numerous defendants, including County of Nevada (County), alleging Soto died as a proximate result of not receiving medical treatment for an obvious and serious medical condition.[1]  County brought a motion for summary judgment, and the trial court found there was no evidence County or its agents were on notice as to Soto's medical

---

[1]  Soto's husband, Anthony Cox, is the father and guardian ad litem of plaintiffs, both minors.

1

condition during her incarceration and plaintiffs failed to provide evidence as to the causal connection between County's actions and Soto's death. Plaintiffs appeal, arguing triable issues of fact exist as to both notice and the causal connection between Soto's incarceration and death. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

One morning in March 2011 Truckee police officers responded to a single-vehicle rollover accident. Soto, Noah, and Kiera were in the vehicle.[2] An officer at the scene, Sergeant Robert Womack, prepared an incident report. Womack stated Soto complained of a minor cut to her left wrist but denied any other medical issues. She could not tell Womack how the collision occurred. When a paramedic arrived, Soto had difficulty "answering questions about what year it was and where she was . . . ." Soto "seemed very slow and lethargic, almost as if in shock." However, she continued to deny any medical issues. Soto could not walk without assistance and when seated in the ambulance almost fell over. The ambulance transported Soto to a local hospital about an hour later.

**At the Hospital**

The hospital admitted Soto, who was examined by Dr. Jonathan Laine. Laine found Soto suffered a concussion without loss of consciousness and a small laceration to her wrist.

Hospital medical records revealed that Soto was also experiencing back pain resulting from a work-related back injury sustained three days before the accident. Soto received treatment for the condition and prescriptions for Norco, ibuprofen, and Valium.

Laine completed and signed a "Prisoner Medical Clearance Report," stating, "I have examined the prisoner and find him/her acceptable for admission to the jail. I have

---

[2] Because Anthony, Noah, and Kiera have the same surname, to avoid confusion we will refer to them herein by their given names.

2

no specific suggestions regarding care of this prisoner for the condition for which I have examined him/her."

At the emergency room, the paramedic told Womack that Soto admitted using Norco and Valium the previous day. Soto also stated she had vomited that morning. Womack spoke with Soto about two and one-half hours after the collision, while she was in the general emergency area. She still could not explain how the collision occurred and denied any head injury, headache, backache, or any other medical issues.

Womack conducted standardized field sobriety tests on Soto at the hospital. She was unable to stand on one foot unassisted, and was lethargic. During the finger-to-nose test, Soto became confused and missed her nose several times. In Womack's opinion, based on his evaluation, Soto was under the influence of a depressant and narcotic, and was unable to safely operate a motor vehicle.

**At the Jail**

Officers arrested Soto for suspicion of driving under the influence and child endangerment, and transported her to jail. As part of the booking procedure, Soto completed a health screening questionnaire, the "Initial Pre-Booking Health Screening" form. The form asked, in part, "Do you have any current health problems or take medications on a daily basis?" Soto answered, "hydrocodone – back pain." Soto also stated she had a sore back from a work-related injury and from the accident. In response to the query, "Is there any other information regarding your health you would like to tell us," Soto answered no. In total, Soto answered yes to four questions on the form, including "Have you had a recent weight loss of more than ten pounds without dieting?" The form states, "Any 'yes' answers need to be referred to the medical staff immediately."

Jail staff completed an "Inmate Booking Assessment Details" form on Soto, concluding she did not appear in need of medical attention. The assessment noted Soto was experiencing a "sore back from a work injury & a roll over crash today" and that she

3

was taking hydrocodone for back pain. During her incarceration, Soto did not request medical care or treatment.

Soto remained at the jail for approximately three hours before posting bail. That afternoon she returned home with Anthony. Anthony did not observe a change in Soto's appearance at that time.

**Subsequent Events**

Early the next morning, Soto told Anthony she was not feeling well, but she "thought she was okay." Soto went back to bed, and when Anthony returned home that afternoon he noticed a change in Soto's condition. Soto was hunched over, having difficulty walking, and was slurring her words. She appeared pale and complained of pain "radiating down her legs."

The pair drove to an occupational health center to see a doctor. When they arrived they discovered no doctors were available and were directed to the hospital where Cox had been seen after the automobile accident.

Soto and Anthony arrived at the hospital emergency room between 4:30 and 5:00 p.m. The next day Soto died while hospitalized. The cause of death was methicillin-resistant staphylococcus aureus (MRSA). Anthony did not know Soto had contracted MRSA until after her death.

**Plaintiffs' Suit and County's Motion for Summary Judgment**

Plaintiffs filed suit against County, the Town of Truckee, Tahoe Forest Hospital, and five individually named physicians, claiming liability for Soto's death. Plaintiffs argued County failed to summon immediate medical care for Soto while she was incarcerated.

County filed a motion for summary judgment. Plaintiffs opposed the motion, offering the declaration of Dr. Gerard Valcarenghi. Valcarenghi, a physician specializing in pulmonary and critical care medicine, reviewed Soto's medical records from the night of the collision and other pertinent documents. Based on his expert opinion, Valcarenghi

4

stated Soto was already afflicted with MRSA at the time she was seen in the emergency room.

Valcarenghi concluded: "It is also . . . my expert opinion to a reasonable degree of medical probability, that it is very likely than not that Ms. Soto would have survived if Nevada County Jail had summoned medical care for her while she was incarcerated on March 22nd, 2011, and she subsequently received timely and appropriate treatment. Given the nature of MRSA the earlier antibiotic treatment is begun the higher the chances of survival, it is my expert opinion that if Ms. Soto had received appropriate treatment March 22nd, 2011, she would still be alive today."

The trial court granted County's motion for summary judgment. The court considered Valcarenghi's declaration and stated: "However, that declaration states only . . . that, if the County had summoned medical care for decedent while she was incarcerated, she had higher chances of survival. But, there is nothing in that declaration demonstrating that the County was on notice of decedent's condition or failed to obtain assistance. Rather, the declaration only provides that decedent's condition existed at the time she saw Dr. Laine at Tahoe Forest Hospital."

The court noted Government Code section 845.6 provides broad general immunity to a public entity subject to the exception where the public entity's employee knew or had reason to know the prisoner was in need of immediate medical care and failed to take action to summon medical care. The court concluded: "Plaintiff has failed to demonstrate any evidence that the County's employees knew or had reason to know that the prisoner was in need of immediate medical care. Furthermore, the Plaintiffs have not presented any triable facts to demonstrate that [*sic*] the requisite causal connection between Ms. Soto's incarceration and her death. Dr. Laine provided a medical clearance less than one hour before decedent was admitted to the jail. The only items listed on the Pre-Booking Health Screening is that decedent had 'hydrocodone-back pain' and also

5

stated 'No' when asked 'Is there any other information regarding your health you would like to tell us?'

"There are no triable facts that would tend to show decedent's medical status or condition deteriorated in the jail or that an immediate return to the hospital from which she was discharged was necessary."

Following entry of judgment, plaintiffs filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

A motion for summary judgment must be granted if the submitted papers show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.) The moving party, whether plaintiff or defendant, initially bears the burden of making a "prima facie showing of the nonexistence of any genuine issue of material fact." (*Id*. at p. 845.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id*. at p. 851.) "Thus, if a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would require a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment as a matter of law, but would have to present his evidence to a trier of fact." (*Ibid*., italics omitted.) Once the moving party has met its burden, the burden shifts to the opposing party to show the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subds. (a), (p)(2).)

We review de novo the record and the determination of the trial court. First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts negating the opponent's claims and justifying a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the

6

final step is to determine whether the opposition demonstrates the existence of a triable issue of fact.  (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1067; *Barclay v. Jesse M. Lange Distributor, Inc.* (2005) 129 Cal.App.4th 281, 290.)

**NOTICE**

Plaintiffs argue triable issues of fact exist as to whether County was on notice of a need to arrange for immediate medical care for Soto during her incarceration.  According to plaintiffs, they submitted "a plethora of evidence to show that Defendant and its agents had actual and/or constructive notice that there was a serious and obvious medical issue" with Soto.

Public entities and their employees are not liable for failing to obtain medical care for prisoners.  (Gov. Code, § 845.6.)[3]  A prisoner includes an inmate of a prison, jail, or correctional facility.  (§ 844.)  Section 845.6 states, in part:  "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."

To impose upon a public entity the duty to furnish such medical care "would be expanding the liability of the public entity beyond that contemplated by the Legislature." (*Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1074.)  The exception to this immunity requires actual or constructive knowledge that the prisoner is in need of medical attention because of a serious and obvious medical condition requiring immediate care.  (*Lucas v. County of Los Angeles* (1996)

---

[3]  All further references are to the Government Code unless otherwise designated.

7

47 Cal.App.4th 277, 288.)  This narrow exception does not apply if a public entity simply knows of a medical condition but fails to treat that condition.  (*Castaneda*, *supra*, 212 Cal.App.4th at p. 1070.)

Plaintiffs point to evidence supporting imposition of the exception:  (1) the initial prebooking health screening form; (2) the booking medical assessment form; (3) the booking photograph; and (4) statements made in police and ambulance reports that Soto had trouble with "simple ambulation, was confused, showed lethargy, and displayed an altered level of consciousness."

Plaintiffs place the greatest emphasis on Soto's answers on the initial prebooking health screening form.  They argue:  "While Plaintiffs concur with Defendant that no mandatory duty was establish[ed] by the Initial Pre-Booking Health Screening Form's direction to jail staff to immediately summon medical staff, Plaintiffs contend that the affirmative answers were sufficient to establish that Defendant and its agents were placed on notice as to the existence of a serious medical condition.  The lack of explanation for Clara Soto's weight loss, the existence of an abscess, as well as her confusion, lethargy, and trouble with simple ambulation should have placed Defendant on notice that there was a serious medical condition that needed to be addressed."

However, in their reply brief, plaintiffs assert that the prebooking form gave notice of Soto's condition because "**On its face,** it directs jail staff to contact medical staff immediately in response to an affirmative answer to questions on the form.  Clara Soto answered in the affirmative to five of these questions. . . .  Any reasonable person would interpret this form as requiring immediate referral to medical staff . . . ."  During oral argument, the trial court asked plaintiffs about the prebooking form, pointing out that one of the questions, "Do you drink alcohol on a daily basis or do you use drugs," would probably be answered in the affirmative by 90 percent of the people in county jail.  Plaintiffs responded that all the jail had to do was refer any inmate who answered any question in the affirmative to medical staff to be "completely alleviated of any liability."

8

Here, however, we are concerned with whether County had notice of Soto's medical condition. Despite answering "yes" to several questions on the prebooking form, Soto answered "no" to the question, "Is there any other information regarding your health you would like to tell us?" She also provided information about her back pain and prescribed medication. Nothing on the prebooking form would have alerted County staff that Soto was suffering from a serious and obvious medical condition requiring immediate medical attention beyond the condition for which she was seen at the hospital.

Although plaintiffs reference the booking medical assessment form, they provide no explanation of what in that form provided any notice of Soto's medical condition. Nor does the booking photo of Soto's shoulder, which plaintiffs claim "clearly shows an abscess on Soto's right shoulder," bolster their claim that County had notice. Plaintiffs fail to explain how an abscess, which Soto described as in the process of healing, provides notice of a serious and harmful condition.

Finally, plaintiffs point to Soto's "trouble with simple ambulation," confusion, lethargy, and altered level of consciousness as evidence that Soto was suffering from a serious and obvious medical condition. However, Soto failed to pass the field sobriety tests administered by Womack, providing a reasonable explanation for Soto's altered level of consciousness, unsteadiness, and confusion. We find no triable issue of fact as to whether County was on notice as to Soto's serious medical condition while at the jail.

**Causal Connection**

Plaintiffs also contend they presented a triable issue of fact as to the causal connection between Soto's incarceration and her death two days later. In support, they rely on Valcarenghi's declaration.

According to plaintiffs, Valcarenghi's declaration establishes a causal connection between Soto's incarceration and her subsequent death. Our review of the declaration reveals no such evidence. Valcarenghi states that Soto was suffering from undiagnosed MRSA on March 22, 2011. He does not state that County knew or reasonably should

9

have known of her condition. In addition, Valcarenghi opines that had County staff summoned immediate medical care for the undiagnosed condition and had Soto received appropriate treatment for MRSA within this window of time that medical treatment might have effectively addressed the condition and Soto would have survived.

What is lacking is any evidence of proximate causation. Unless County staff knew of Soto's undiagnosed condition, their failure to summon immediate medical care cannot result in liability. Causation in a wrongful death action requires the plaintiff to prove that the victim's death was caused by the wrongful act or neglect of the defendant. (*Mayes v. Bryan* (2006) 139 Cal.App.4th 1075, 1092-1093; see Code Civ. Proc., § 377.60.) Nothing in Valcarenghi's declaration establishes any negligence or wrongful act by County staff. Accordingly, there is no disputed issue of material fact as to causation or any linkage between Soto's incarceration and her death two days later.

## DISPOSITION

The judgment is affirmed. County shall recover costs on appeal.

                                                        RAYE            , P. J.

We concur:


            HULL            , J.


            ROBIE            , J.

10