Filed 5/24/24  Cupido v. City of Los Angeles CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| VANESSA CUPIDO et al.,<br><br>　　Plaintiffs and Appellants,<br><br>　　v.<br><br>CITY OF LOS ANGELES,<br><br>　　Defendant and<br>　　Respondent. | B326279<br><br>(Los Angeles County<br>　Super. Ct. No.<br>22STCV16077) |

APPEAL from an order of the Superior Court of Los Angeles County, William A. Crowfoot, Judge.  Affirmed.

Law Office of Isaac Toveg and Isaac Toveg; and Joseph S. Socher for Plaintiffs and Appellants.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Scott Marcus, Chief Assistant City Attorney, Shaun Dabby Jacobs and Timothy Martin, Deputy City Attorneys, for Defendant and Respondent.

_____

Plaintiffs Beatriz Ballesteros and Vanessa Cupido (collectively, plaintiffs) appeal from the trial court's order denying their petitions for relief from the claim presentation requirement of Government Code[1] section 945.4 of the Government Claims Act (§ 810 et seq.).  Because plaintiffs have not shown error, we affirm.

## BACKGROUND

### I.  Claim for Damages Presented on Behalf of Plaintiffs' Mother

On May 15, 2021, plaintiffs' mother, Alicia Flores, allegedly suffered injury when she fell out of a wheelchair and hit her head on a public sidewalk in the City of Los Angeles (the city).  Around a week later, on May 21, 2021, Flores died.

Within six months of the incident, on November 5, 2021, attorney Isaac Toveg (who represents plaintiffs in this matter) presented a claim for damages to the city (Claim No. C22-02454), listing Flores as the claimant and indicating she had died a week after the May 15, 2021 incident.[2]  The claim alleges the city caused injury to Flores by "[n]ot maintaining the sidewalk and leaving it in a state of disrepair and . . . riddled with holes and gaps."  According to the claim, Flores's wheelchair came into contact with a raised portion of an uneven sidewalk, and the impact caused her to fall out of the wheelchair and hit her head on the sidewalk.

---

[1] Undesignated statutory references are to the Government Code.

[2] Under the Government Claims Act, a "claim relating to a cause of action for death or for injury" must be presented to the public entity "not later than six months after the accrual of the cause of action."  (§ 911.2.)

2

The claim form includes the following question: "What DAMAGE or INJURIES do you claim resulted? Please give full extent of injuries and damages claimed[.]" Attorney Toveg responded on behalf of Flores with the words, "Wrongful death." Toveg listed the amount of the claim as $3,000,000. In response to the request for an itemization of damages, Toveg listed, "Funeral costs, medical bills, and general damages[.]"

Toveg designated each of the plaintiffs on the claim form as a "witness." The claim does not indicate plaintiffs are Flores's heirs or relatives. Nor does it indicate plaintiffs had a claim for damages against the city. Plaintiff Ballesteros's address is set forth in the claim; plaintiff Cupido's is not. The claim does not indicate Toveg represented plaintiffs.

On December 23, 2021, the city sent a letter to Toveg, denying the claim he had presented on behalf of Flores.

## II. Plaintiffs' Application to the City for Leave to Present a "Modified" Claim; and the Subsequently Presented "Amended" Claim

On or around April 12, 2022, Toveg submitted a letter to the city, on behalf of plaintiffs, styled as an "[a]pplication for leave to present a modified government tort claim, late." In the letter, Toveg stated he had "inadvertently inserted" Flores's name as the claimant, and plaintiffs' names as witnesses, on the government claim he presented to the city on November 5, 2021. He explained that plaintiffs are Flores's daughters, and he asserted, "they are the claimants" on the claim he previously presented to the city. He added: "If we need to, please kindly accept this correspondence as our formal application and request for leave to present a late claim pursuant to [G]overnment [C]ode section 911.4." He argued this was "an excusable mistake under

3

the totality of the circumstances," and the city was not prejudiced, "as this claim was already timely filed and timely rejected by" the city.

Toveg attached to the letter a document entitled "Notice of Modified (Amended) Government Tort Claim." The notice, which lists plaintiffs as the claimants, states:

"The claimants are providing the [city] with Notice of the modified Amended Government tort claim and hereby are filing an Amendment to Government Tort claim Number C22-02454 as there were incorrect claimant [*sic*] (the decedent Alicia Flores) inserted in the claim. The true names of Claimants are Vanessa Cupido and Beatriz Ballesteros (daughters of the decedent-incorrect claimant Alicia Flores). The Attorney [Toveg] amends the Claim by substituting the true names for the incorrect name wherever it appears in the Claim form. Thus this document which includes the Amendment to the Claim number C22-02454 is now deemed filed. If the [city] does not agree with this assessment, [p]lease notify Attorney Isaac Toveg at [telephone number] or thru [email address] immediately." Toveg did not attach a new or amended claim for damages to this notice.

One month later, on May 12, 2022, Toveg presented to the city a claim for damages on behalf of plaintiff Ballesteros and a claim for damages on behalf of plaintiff Cupido. This was the first claim submitted on behalf of either plaintiff. The claims did not simply substitute plaintiffs' names for Flores's name, as requested in the above-described application for leave to present a modified claim and set forth in the above-described notice of modified (amended) claim. The claims made other changes as well. For example, plaintiffs (as claimants) revised the dollar amount of the claim from $3,000,000 to $10,000,000; they omitted

4

funeral costs and medical bills from the description of damages; and they sought unspecified "special" damages. Like the earlier claim presented on behalf of Flores, these amended claims described the damage or injuries that resulted from the incident as "wrongful death," in pertinent part.

### III. Plaintiffs' Complaint in This Action

On May 13, 2022, the day after they presented their claims to the city, plaintiffs filed a form complaint against the city in this action.[3] Plaintiffs asserted causes of action against the city for premises liability (willful failure to warn and dangerous condition of public property) and wrongful death. Because this is not the operative complaint, we will not elaborate here on plaintiffs' allegations but will address them below in connection with our discussion of the operative first amended complaint.

### IV. Plaintiffs' Applications to the City for Leave to Present Late Claims

On June 15, 2022, around a month after plaintiffs filed their complaint, the city sent separate letters to Toveg, stating it had taken no action on Ballesteros's claim (assigned Claim No. C22-20021) and Cupido's claim (assigned Claim No. C22-20020), presented on May 12, 2022, because the claims were not presented within six months after the incident "as required by law." The form letters included information about submitting an application for leave to present a late claim under section 911.4.

---

[3] Plaintiffs also named as defendants two individuals who are not affiliated with the city and are not parties to this appeal. Apparently, plaintiffs claim the individual defendants' negligent maintenance of private property near the sidewalk contributed to the incident.

The city did not send a separate response concerning plaintiffs' April 12, 2022 application for leave to present a modified claim.

On or around July 8, 2022, more than a year after the incident and Flores's death, Toveg submitted letters to the city, one on behalf of each plaintiff, styled as an "application for leave to present a late government tort claim, pursuant to California Government Code section 911.4." In the letters, Toveg argued the city should grant *plaintiffs'* applications for leave to present late claims because *Flores* was incapacitated and died during the six-month period for filing a claim (see § 911.6, subd. (b)(4) & (6)), notwithstanding that Toveg had filed a timely claim on behalf of Flores arising from the incident. He further argued in the letters that the city should grant the applications pursuant to section 911.6, subdivision (b)(1), because the "failure to present a claim was through mistake [and/or] inadvertence and the [city] was not prejudiced in its defense of the claim by the failure to present the claim by Alicia Flores['s] heirs."

Toveg described the mistake or inadvertence as follows: "Initially in this Claim [Claim No. C22-02454, filed November 5, 2021] we intended to insert both the decedent Alicia Flores and her daughters (Beatriz Ballesteros, and Vanessa Cupido) as the Claimants but the online application rejected it and placed the daughters as witnesses. W[e] attempted to modify the claim a few times by calling [the city] and leaving messages but no one return[ed] our calls nor called us back."

Toveg further explained that his office was "under the assumption that both the decedent and her heirs (daughters) would be handled as one claim as is the case with most personal injury cases in California." He asserted, "In every situation outside the government claims spectrum, that is all private

6

insurance claims only, [there is] only one claim number per occurrence, not one claim number per injured person." He represented that "the person on [*sic*] the counter who accepted the documents and stamped [the] documents" he filed on April 12, 2022 (the application for leave to present a modified claim and notice of modified claim) "indicated to [him] that it[']s one claim per incident . . . ." However, when he received the city's June 15, 2022 letters, taking no action on plaintiffs' May 12, 2022 claims, and assigning a separate case number to each claim, he realized "that [his office] needed to undertake this process to open up a claim for the heirs Beatriz Ballesteros and Vanessa Cupido."

Toveg asserted in the letters that there was no prejudice to the city because he had presented a timely claim on behalf of Flores. He suggested that the designation of plaintiffs as witnesses on Flores's claim form (with no information regarding their familial relationship to Flores) should have indicated to the city that they were "seeking damages based on the same conduct underlying the named-claimant's claims."

Finally, Toveg stated in the letters: "Another avenue to allow this late claim is pursuant to the Ca[lifornia] Governor's Executive order N-35-20 which can be read to toll this filing deadline." He did not describe the executive order or state how it applies to the deadlines under the Government Claims Act.

## V.    Plaintiffs' First Amended Complaint

On July 11, 2022, a few days after Toveg sent letters to the city on behalf of plaintiffs, seeking leave to present late claims, Toveg filed a first amended complaint on behalf of plaintiffs. In addition to the causes of action for premises liability and wrongful death (Code Civ. Proc., § 377.60 et seq.) alleged in the original complaint, plaintiffs asserted a survival cause of action

7

(Code Civ. Proc., § 377.34) against the city in their capacities as Flores's successors in interest.

In the first amended complaint, plaintiffs described the incident as follows: "The incident occurred when decedent Alicia Flores was moving in a wheelchair on the sidewalk and tripped in an [*sic*] 1 5/8 inch uplift which caused the wheelchair to overturn and Flores to fall in [*sic*] the sidewalk and sustain injuries to her body and mind." In the cause of action for premises liability, plaintiffs alleged the city created a dangerous condition of public property and willfully failed to warn against the dangerous condition.

In the survival cause of action, plaintiffs alleged that as a direct result of the city's actions, "Alicia Flores sustained severe injuries to her body and mind that ultimately resulted in her death after she survived for an appreciable period of time and suffered both physical injuries and property damage." Plaintiffs, "in their capacity as successors in interest to the decedent's estate," sought "all damages accruing to decedent in a survival action," including "any penalties, punitive or exemplary damages that the decedent would have been entitled to had she lived, and including but not limited to pain, suffering, inconvenience, loss of enjoyment of life, depression, and disfigurement."

On the wrongful death cause of action, plaintiffs sought "economic damages, including but not limited to monetary contributions and financial support from decedent, loss of gifts or benefits, household services, noneconomic damages, including but not limited to being deprived of the love, affection, solace, companionship, society, moral support, assistance, protection, training and guidance, consortium, services, comfort, care,

counsel and advice of decedent, and any other damages permitted by law . . . ."

## VI.  The City's Denial of Plaintiffs' Applications to Present Late Claims, and Plaintiffs' Petitions for Relief from the Claim Presentation Requirement

On July 29, 2022, after plaintiffs filed the first amended complaint, the city sent separate letters to Toveg, stating it had denied Ballesteros's and Cupido's applications for leave to present late claims.  The form letters included information about filing a petition for relief from the claim presentation requirement of section 945.4.  Two months later, on September 29, 2022, plaintiffs each filed such a petition for relief in the trial court pursuant to section 946.6.

In their petitions, plaintiffs repeated the allegations set forth in their applications to the city to present late claims: that the city's online system rejected Toveg's attempt to insert plaintiffs as claimants and listed them as witnesses instead, and that Toveg contacted the city and left messages regarding amending the November 5, 2021 claim to substitute plaintiffs as claimants, but no one at the city responded to the messages. Plaintiffs did not provide any evidence supporting these allegations.  Although Toveg submitted a declaration in support of the petitions (referencing exhibits), he did not mention in the declaration his alleged attempt to insert plaintiffs as claimants on the November 5, 2021 claim, or his alleged communications with the city.

Plaintiffs also repeated arguments they made in their applications to the city to present late claims: that the city should have accepted their late claims (and the trial court should grant their petitions) because (1) Flores was incapacitated and died

9

during the six-month period for filing a claim (see §§ 911.6, subd. (b)(4) & (6), 946.6, subd. (c)(4) & (6)), and (2) the failure to present a claim was due to mistake or inadvertence and the city was not prejudiced (§§ 911.6, subd. (b)(1), 946.6, subd. (c)(1)). Plaintiffs also argued they showed reasonable diligence in submitting the late claims after they "learned of the true facts and error."

The city filed an opposition to plaintiffs' petitions, arguing plaintiffs did not meet their burden to demonstrate they are entitled to relief under section 946.6. Specifically, the city asserted plaintiffs did not show "they exercised the requisite diligence to excuse compliance with the Government Claims Act."

In their reply briefs in support of their petitions, plaintiffs argued the November 5, 2021 claim Toveg filed on behalf of Flores—which lists plaintiffs as witnesses and did not identify their familial relationship with Flores—established *their* substantial compliance with the claim presentation requirement.

On November 3, 2022, the trial court held a hearing on plaintiffs' petitions for relief and heard oral argument.[4] In its written order, issued the same day, the court denied the petitions, concluding (1) each plaintiff was required to file her own claim with the city, and the claim filed on behalf of Flores did not satisfy the claim presentation requirement as to plaintiffs; (2) plaintiffs submitted their application to the city to present late claims outside the one-year time limit set forth in section 911.4, subdivision (b); and (3) "[p]laintiffs do not provide any reason for failing to submit claims on their own behalf, and

---

[4] Plaintiffs did not include the reporter's transcript of this hearing as part of the appellate record.

10

[p]laintiffs' counsel does not show that he was diligent in seeking relief when he realized his mistake."

Plaintiffs filed timely notices of appeal from the trial court's November 3, 2022 order. "An order denying relief from the claim presentation requirement under Government Code section 946.6 is appealable." (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 64, citing *Ebersol v. Cowan* (1983) 35 Cal.3d 427, 435, fn. 8.) The trial court's denial of the petitions for relief resolved all claims between the city and plaintiffs in their individual capacities.

## DISCUSSION

Plaintiffs contend the trial court committed reversible error when it denied their petitions for relief from the claim presentation requirement. For the reasons explained below, we disagree with plaintiffs and affirm the order.

## I.   No Substantial Compliance With the Claim Presentation Requirement

Plaintiffs contend the November 5, 2021 claim Toveg presented to the city on behalf of Flores established *their* substantial compliance with the claim presentation requirement. We reject this contention.

### A.   Applicable law regarding claim presentation requirement

With certain exceptions not relevant here, a claimant must present a claim against a local public entity before the claimant may file an action for money or damages against the entity. (§§ 905, 945.4.) The claimant or a person acting on his or her behalf must present the claim. (§ 910.) The claim must show, among other things, the name and address of the claimant and a "general description of the indebtedness, obligation, injury,

11

damage or loss incurred so far as it may be known at the time of presentation of the claim." (§ 910, subds. (b) & (d).) The claimant or "some person on his behalf" must sign the claim. (§ 910.2.)

"Generally, each claimant must file his or her own tort claim. When people suffer separate and distinct injuries from the same act or omission, they must each submit a claim. One claimant cannot rely on a claim presented by another. [Citation.] This rule applies where different claimants are alleging survivor theories and wrongful death theories of liability arising from the same transaction." (*Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1062; *Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783, 796-797; see also *Lewis v. City and County of San Francisco* (1971) 21 Cal.App.3d 339, 341 ["The filing of a wrongful death claim by one heir for herself alone, even though it similarly gives the public body full opportunity to investigate, does not excuse absence of a claim by another heir"].)

A "claim relating to a cause of action for death or for injury to person or to personal property" must be presented "not later than six months after the accrual of the cause of action." (§ 911.2, subd. (a).) During the COVID-19 pandemic, executive orders of the Governor extended by 120 days the time to present claims that accrued before June 30, 2021, like the claims here. (*Coble v. Ventura County Health Care Agency* (2021) 73 Cal.App.5th 417, 422 (*Coble*).) Plaintiffs first presented their own claims on May 12, 2022, nearly a year after Flores's death on May 21, 2021, outside the extended deadline for presenting a claim (six months plus 120 days after the claim accrued, or March 20, 2021).

### B.    Substantial compliance doctrine

"Where a claimant has attempted to comply with the claim requirements but the claim is deficient in some way, the doctrine of substantial compliance may validate the claim 'if it substantially complies with all of the statutory requirements . . . even though it is technically deficient in one or more particulars.'" (*Connelly v. County of Fresno* (2006) 146 Cal.App.4th 29, 38.)  "The doctrine of substantial compliance, however, 'cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute.'" [Citation.]  The test for substantial compliance is whether the face of the filed claim discloses sufficient information to enable the public entity to make adequate investigation of the claim's merits and settle it without the expense of litigation." (*Ibid.*)

The November 5, 2021 claim Toveg filed on behalf of *Flores* does not establish *plaintiffs'* substantial compliance with the claim presentation requirement.  The claim does not indicate in any way that either plaintiff has a claim for damages against the city.  Plaintiffs are listed as witnesses to the incident.  There is no indication in the claim that plaintiff Ballesteros or plaintiff Cupido has a familial relationship with Flores such that they have standing to pursue a wrongful death claim against the city.  Thus, there is a total omission of an essential element of the claim that the substantial compliance doctrine cannot cure: plaintiffs' identities as claimants.

Plaintiffs point out that although the November 5, 2021 claim was presented on behalf of Flores (and encompasses the survivor cause of action brought by plaintiffs as her successors in interest), it describes the injuries and damages claimed with the

13

words, "Wrongful death." Plaintiffs argue, if the city had investigated the claim, it could have discovered plaintiffs' identities as Flores's daughters and assumed they wanted to pursue wrongful death claims against the city in their individual capacities. Plaintiffs cite no authority indicating a public entity must undertake such an investigation to determine the identity of potential claimants and then operate under the assumption that those potential claimants desire to pursue their own claims against the public entity; and we are aware of none.

*Lacy v. City of Monrovia* (1974) 44 Cal.App.3d 152, a case upon which plaintiffs rely, is readily distinguishable. There, the Court of Appeal concluded a wife's cause of action against a public entity was not barred by her failure to file a government claim against the public entity because her husband's government claim specifically itemized the type and amount of damages he claimed she incurred ("Damage for detention, humiliation and embarrassment and threat to my wife's life $10,000.00"), in addition to the damages he and his children incurred. (*Id*. at pp. 155-157 & fn. 3 ["In the instant case a bona fide attempt was made to comply with the claim statute. Respondent [public entity] not only had notice of the occurrence giving rise to the claim but also had the names of all persons seeking damages and the amount of damages claimed"].) Here, the claim filed on behalf of Flores did not indicate in any way that plaintiffs were relatives of Flores who were seeking damages against the city for their own injuries arising out of the incident.

For the foregoing reasons, the November 5, 2021 claim filed on behalf of Flores does not establish plaintiffs' substantial compliance with the claim presentation requirement.

14

## II. The Trial Court Did Not Err in Denying Plaintiffs' Petitions for Relief From the Claim Presentation Requirement

Under section 946.6, subdivision (c), a court must grant a petition for relief from the claim presentation requirement "if the claimant demonstrates by a preponderance of the evidence" that the application to the public entity to present a late claim under section 911.4 "was made within a reasonable time not exceeding one year after the accrual of the cause of action, and one of the other four requirements listed in . . . section 946.6, subdivision (c) is met." (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1777-1778 (*Munoz*).)  In this appeal, plaintiffs argue they met the following two requirements:  (1) "The person who sustained the alleged injury, damage, or loss died before the expiration of the time specified in Section 911.2 for the presentation of the claim" (§ 946.6, subd. (c)(6)); and (2) "The failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from the requirements of Section 945.4" (§ 946.6, subd. (c)(1)).

"Section 946.6 is a remedial statute intended 'to provide relief from technical rules that otherwise provide a trap for the unwary claimant.' [Citations.]  As such, it is construed in favor of relief whenever possible." (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275 (*Bettencourt*).)

15

### A. Plaintiffs did not submit an application to the city to present a late claim within one year after the accrual of the cause of action

"Filing a late-claim application within one year after the accrual of a cause of action is a jurisdictional prerequisite to a claim-relief petition.  [Citation.]  When the underlying application to file a late claim is filed more than one year after the accrual of the cause of action, the court is without jurisdiction to grant relief under . . . section 946.6." (*Munoz, supra*, 33 Cal.App.4th at p. 1779; § 911.4, subd. (b) [the late-claim "application shall be presented to the public entity . . . within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim"].)  Here, plaintiffs submitted their late-claim applications to the city on July 8, 2022, more than a year after plaintiffs' wrongful death cause of action accrued on May 21, 2021 (the date of Flores's death).  Thus, plaintiffs' applications were untimely, and the trial court was without jurisdiction to consider them.

Plaintiffs contend their time to file a late-claim application was extended by 120 days under the Governor's executive orders.  Not so.  As the Court of Appeal explained in *Coble, supra*, 73 Cal.App.5th at page 422, "Paragraph 11 of Executive Order N-35-20 provides:  'The time for presenting a claim pursuant to Government Code section 911, et seq., is hereby extended by 60 days. . . .'  (Governor's Exec. Order No. N-35-20 (Mar. 21, 2020) p. 4, ¶ 11 (Executive Order N-35-20).)  By Executive Order N-71-20, the Governor extended these times by an additional 60 days.  (Governor's Exec. Order No. N-71-20 (June 30, 2020) p. 2, ¶ 6 ['The timeframes set forth in Executive Order N-35-20,

Paragraph 11, are extended by an additional 60 days'].) Thus, the total extension is 120 days. Pursuant to Executive Order N-08-21, the 120-day extension applies to claims that accrued before June 30, 2021. (Governor's Exec. Order No. N-08-21 (June 11, 2021) p. 3, ¶ 7e ['Claims accruing before June 30, 2021 will remain subject to the 120-day extension'].)" (Fn. omitted.)

The court in *Coble* held that Executive Order N-35-20 did not extend the time for submitting an application for leave to present a late claim; it only extended the time for presenting a *claim*. (*Coble*, *supra*, 73 Cal.App.5th at pp. 425-427.) The court explained, "The statutory scheme here clearly distinguishes between a 'claim' and an 'application.' The terms are not synonymous." (*Id*. at p. 426.) "Had the Governor intended to extend not only the six-month statutory period for presenting a timely claim but also the one-year statutory period for filing an application for leave to present a late claim, he would have said so in Executive Order N-35-20." (*Ibid*.) "We cannot redraft the executive order to include the omitted language, '*or application for leave to present a late claim*.' " (*Id*. at p. 427.) Plaintiffs urge us not to follow *Coble*, but we have no cause to hold otherwise.

Plaintiffs' July 8, 2022 applications to present late claims were untimely, and the trial court had no jurisdiction to act upon them.

**B.     Plaintiffs' April 12, 2022 application did not comply with the statutory requirements for a late-claim application**

Plaintiffs urge us to construe their April 12, 2022 application to present a "modified" claim as a timely application to present a late claim. They note that in this earlier filed application, they requested that the city treat it as an application

17

to present a late claim under section 911.4, if that was what was required. The problem with plaintiffs' request is that this application failed to comply with the requirements of an application to present a late claim under section 911.4, as the trial court properly concluded.

Section 911.4, governing applications to present late claims, requires that the "proposed claim shall be attached to the application." (§ 911.4, subd. (b).) Plaintiffs did not attach their proposed claims to their April 12, 2022 application to present a "modified" claim. Rather, they attached a pleading entitled "Notice of Modified (Amended) Government Tort Claim," purporting to "amend[] the Claim [filed on behalf of Flores] by substituting the true names [of plaintiffs] for the incorrect name [Flores] wherever it appears in the Claim form." No prior claim had ever been presented to the city on behalf of either plaintiff. Plaintiffs could not "amend" a claim they never presented in the first place.

A month later, on May 12, 2022, plaintiffs presented to the city, for the first time, their own government claims. The claims were untimely, as they were not presented within six months plus 120 days after the cause of action accrued (or March 21, 2022). The city did not take action on the claims because they were late and were not presented with applications to present late claims.

Plaintiffs argue that the presentation of the May 12, 2022 claims (within one year after their wrongful death cause of action accrued) cured any defect in treating their April 12, 2022 application to present a modified claim as an application to present a late claim. We disagree. Plaintiffs did not ask the city to consider the May 12 claims in connection with their April 12

18

application, and there was no reason for the city to do so.  The May 12 claims were *new* claims, not amendments to the claim filed on behalf of Flores, as contemplated by the April 12 application.

### C. Plaintiffs did not establish any of the statutory grounds for relief from the claim presentation requirement

Even assuming plaintiffs' April 12, 2022 application could be construed as a proper application to present a late claim, we have no cause to disturb the trial court's order denying plaintiffs' petitions for relief from the claim presentation requirement.

"The determination of the trial court in granting or denying a petition for relief under . . . section 946.6 will not be disturbed on appeal except for an abuse of discretion.  Abuse of discretion is shown where uncontradicted evidence or affidavits of the plaintiff establish adequate cause for relief." (*Munoz*, *supra*, 33 Cal.App.4th at p. 1778.)

As set forth above, plaintiffs rely on the following two provisions in section 946.6 to excuse their failure to comply with the claim presentation requirement:  (1) "The person who sustained the alleged injury, damage, or loss died before the expiration of the time specified in Section 911.2 for the presentation of the claim" (§ 946.6, subd. (c)(6)); and (2) "The failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from the requirements of Section 945.4" (§ 946.6, subd. (c)(1)).

There is no logical connection between Flores's death and plaintiffs' failure to present timely claims to the city, and

19

plaintiffs have articulated none. First, plaintiffs' attorney filed a timely claim on behalf of Flores, the decedent. Second, plaintiffs' wrongful death claims did not accrue until Flores died. This is not a situation where the decedent died after the cause of action accrued and before expiration of the six-month period (plus 120 days) for presenting a claim. If we accepted plaintiffs' position on this issue, every wrongful death claimant would be excused from complying with the six-month deadline for presenting a claim. There is no authority supporting this proposition.

The record before us contains no evidence supporting plaintiffs' assertion that their failure to present timely claims was through mistake, inadvertence, surprise, or excusable neglect. Plaintiffs rely on unsworn, inadmissible statements by Toveg in correspondence and pleadings (that we summarized above). Plaintiffs cite no admissible evidence in the record because there is none. The denial of a petition for relief under section 946.6 is proper "where there is simply no competent evidence before the trial court upon which it could exercise its discretion." (*Munoz, supra*, 33 Cal.App.4th at p. 1783.)

In denying the petitions for relief, however, the trial court apparently considered Toveg's unsworn statements about his alleged mistake or inadvertence, concluding they did not establish grounds for relief. If we were to treat Toveg's unsworn statements as admissible evidence, we would agree with the trial court's conclusion.

At various times, Toveg stated in correspondence or pleadings: (1) that he inadvertently inserted Flores's name as the claimant; (2) that he tried to enter plaintiffs as claimants, but the city's online system entered them as witnesses instead; and

20

(3) that he did not know each claimant was required to submit her own claim.

"In deciding whether counsel's error is excusable, [a] court looks to: (1) the nature of the mistake or neglect; and (2) whether counsel was otherwise diligent in investigating and pursuing the claim." (*Bettencourt*, *supra*, 42 Cal.3d at p. 276.) Toveg knew on November 5, 2021 that plaintiffs were not entered as claimants on the claim form he presented that day on behalf of Flores; they were entered as witnesses. He waited more than six months to present (late) claims on behalf of plaintiffs. In the exercise of reasonable diligence (e.g., legal research), he should have discovered long before then that each potential claimant was required to present her own claim to the city.

The trial court did not abuse its discretion in denying plaintiffs' petitions for relief from the claim presentation requirement.

## DISPOSITION

The order is affirmed. Respondent is entitled to recover costs on appeal.

NOT TO BE PUBLISHED

                                                    CHANEY, J.

We concur:


        ROTHSCHILD, P. J.


        BENDIX, J.

21